IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THERMAPURE, INC., <br><br> Plaintiff, <br><br> v. <br><br> TEMP-AIR, INC., GIERTSEN COMPANY OF ILLINOIS, INC., SERVPRO INDUSTRIES, INC., MALLORY SUN, L.L.C. a/k/a SERVPRO OF DOWNERS GROVE AND OAK BROOK, DISASTER KLEENUP INTERNATIONAL, INC., DRI-EAZ PRODUCTS, INC., RXHEAT, LLC, CAMBRIDGE ENGINEERING, INC. and JON-DON, INC., <br><br> Defendants. | Case No. 1:10-cv-04724 <br><br> The Honorable Joan H. Lefkow <br> Magistrate Judge the Hon. Nan R. Nolan <br><br> **JURY TRIAL DEMANDED** |

**THERMAPURE'S OPPOSITION TO DEFENDANT TEMP-AIR, INC.'S MOTION TO SEVER AND TRANSFER**

This case is not a candidate for severance or transfer to Minnesota. As ThermaPure, Inc. ("Thermapure") has already shown in response to Cambridge Engineering and RxHeat's motion to sever (Dkt. 87), the defendants are properly joined. Defendant Giertsen Company of Illinois, Inc. ("Giertsen") even filed a cross-claim against Temp-Air, Inc. ("Temp-Air"), claiming that Temp-Air is responsible for Giertsen's infringement. Temp-Air also has an office in Elgin. Giertsen's relationship with Temp-Air, the source of the cross-claim, also connects Temp-Air to this District. The motion should be denied.

**I.      BACKGROUND**

ThermaPure, Inc. was founded by inventor and CEO David Hedman. ThermaPure and its associated companies are in various related business which use heat in restoration and pest eradication. Thermapure's inventions have prevented millions of tons of toxic chemicals from entering this country. The restoration business includes using heat to dry out and sanitize residential

and commercial buildings after water damage has occurred and using heat to clean up mold and toxic chemicals in residential or commercial buildings. The pest eradication business includes using heat to kill dust mites which cause asthma, and using heat to kill pests such as bed bugs, termites, wood boring beetles, cockroaches, scorpions and other arachnoids. ThermaPure's business also includes manufacturing and selling equipment to perform these tasks. ThermaPure also has a licensing program in which it teaches, trains and advertises for its licensees who use ThermaPure's patented technology. David Hedman is the sole inventor of the '148 patent and a co-inventor of the '812 patent.

Temp-Air was actually formed in 2007, when an investment group bought what was formerly Rupp Industries, Inc. ("Rupp") (Ex. 1). Rupp, and later Temp-Air, are also in the business of restoration and pest eradication. ThermaPure had a business relationship with Rupp. Instead of upholding its contractual obligations with ThermaPure, Temp-Air has chosen to willfully infringe the patents in suit, resulting in this case.

Temp-Air tries to sling mud in the "Background" section of its motion. Temp-Air refers to other litigation but omits two important facts. First, regarding the Water Out litigation, Temp-Air does not disclose that a jury found that Water Out induced infringement of the '812 patent and also found the patent to be valid. (Ex. 2). The only issue that was undecided was the amount of damages, but Water Out filed for bankruptcy before a decision could be reached. The bankruptcy trustee and Water Out have not yet contested ThermaPure's valuation of the claim against Water Out of approximately 26 million dollars. (Ex. 3).

Temp-Air also refers to a self-serving press release issued by a company called "Team Too." Temp-Air fails to explain that Team Too itself issued that press release in retaliation for a permanent injunction issued by the Los Angeles County Superior Court based on Team Too's multiple

breaches of a confidentiality agreement that it had entered into with a company called TPE Associates, LLC (a company associated with ThermaPure). (Ex. 4).

Even more disturbing than Temp-Air's rhetoric is Temp-Air's willingness to make unsupported representations to the Court which are jarringly at odds with the record, including the following:

| **Temp-Air's Representation's to the Court** | **Contradictory Facts** |
|---|---|
| "ThermaPure has sued 9 wholly unrelated defendants who are scattered all over this country…" (Dkt. 76 at 1). | <ul><li>Giertsen is a service provider of Temp-Air's who has brought a cross-claim against Temp-Air. (Dkt. 53 at 8).</li><li>Giertsen uses Dri-Eaz Products (Ex. 5).</li><li>Servpro of Downers Grove and Oak Brook is a franchisee of Servpro Industries Inc. (Dkt. 1 at p.3, ¶ 8).</li><li>RxHeat, LLC ("RxHeat") and Cambridge Engineering, Inc. ("Cambridge") are sister companies sharing common ownership. (Dkt. 58 at 2);</li><li>Jon-Don, Inc. ("Jon-Don") has a relationship with both RxHeat and Jon-Don. (Dkt. 58 at 2).</li><li>Jon-Don also has a relationship with Dri-Eaz. (Ex. 6).</li></ul> |
| "Temp-Air, a Minnesota company located in Burnsville, Minnesota, has not sold any products or conducted any business with the other defendants." (Dkt. 76 at 1-2). | <ul><li>Temp-Air has conducted business with Giertsen by at least marketing and advertising for Giertsen by sending directing traffic from its website to Giertsen. (Ex. 7, p. 4).</li><li>Giertsen also believes this statement to be false, as it has brought cross-claims stemming from its business relationship with Temp-Air regarding its purchase of Temp-Air equipment. (Dkt. 53 at 8-9).</li></ul> |
| "Customers who require training on how to use the trailers travel to Minnesota and are trained at the Tem-Air facility in Burnsville. http://www.thermalremediation.com/bed-bugs/faqs.aspx" (Dkt. 76 at 4). | <ul><li>Temp-air is offering this as evidence that it *only* trains in Minnesota. In fact, Temp-Air trains nationwide. The link provided by Temp-Air reveals that Temp-Air can and does train on-site, outside of Minnesota. Under the question "Do You Provide Training" the response reads, "Yes, we provide equipment and basic</li></ul> |

| | |
|---|---|
| | application training at our Burnsville, MN facility with a purchase of an electric bed bug heat treatment package. **On-site training is available at an additional cost**." http://www.thermalremediation.com/bed-bugs/faqs.aspx (emphasis added). (Ex. 8) |
| "All technical support required by bed bug trailer customers is provided by staff at the Minnesota facility." (Dkt. 76 at 4) | • This statement is contradicted by Temp-Air's brief: "In each of Temp-Air's facilities **other than its Burnsville, Minnesota headquarters**, Temp-Air employs **sales and service personnel** who either sell or rent Temp-Air's products or **repair and maintain** Tem-Air's equipment to customers in such facilities geographic region. http://www.temp-air.com/locateus.aspx." (Dkt. 76 at 2-3). |
| "Temp-Air does not run **any** portion of its bed bug trailer business out of Illinois. Korn Decl., ¶ 6." (Dkt. 76 at 4) (emphasis original). | • This statement is contradicted by Temp-Air's brief: "In each of Temp-Air's facilities **other than its Burnsville, Minnesota headquarters**, Temp-Air employs **sales and service personnel** who either sell or rent Temp-Air's products or **repair and maintain** Tem-Air's equipment to customers in such facilities geographic region. http://www.temp-air.com/locateus.aspx." (Dkt. 76 at 2-3)<br>• Further, Temp-Air advertises in Illinois via its website, which is enough business activity to uphold personal jurisdiction in the 7th Circuit. State of Ill. v. Hemi Group, LLC, 2010 U.S. App. LEXIS 19126 (7th Cir. Sept. 14, 2010). |
| "Temp-Air does not make or sell <u>any</u> heat remediation equipment with filters or with silica air gel, so it is impossible for Temp-Air to guess which of its products could be accused of infringement here." (Dkt 76 at 4, FN 1) (emphasis original). | • Temp-Air sells filters and also sells filters as part of their bed bug package. (Ex. 9) |
| "ThermaPure is well aware that Tem-Air's bed bug trailers do not use any filters or silica gel. Korn Decl., ¶ 12." (Dkt. 76 at 7). | • Temp-Air sells filters and also sells filters as part of their bed bug package. (Ex. 9) |

- 4 -

Temp-Air's misstatements alone – which go the heart of its motion – demonstrate why severance is inappropriate.

## II. JOINDER IS APPROPRIATE UNDER RULE 20(a)(2)

Courts permit joining defendants if: "any right to relief is asserted against them jointly, severally, **or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences**; and **any question of law or fact common to all defendants will arise out of the action**." Fed.R.Civ.P. 20(a)(2)(emphasis added). Thus, Rule 20(a)(2) as applied to this case dictates that the joinder will be permitted if 1) there is a right in relief in respect to or arising out of the same transaction or occurrence, and 2) that there is any common question of law or fact.

Temp-Air spends the bulk of its brief complaining that litigating in Minnesota would be much more convenient for it, but fails to address the two prongs for joinder. Whether Minnesota would be more convenient for Temp-Air becomes a moot point because Temp-Air fails to show that it should be severed from this case.

Temp-Air cannot run away from Giertsen's cross-claim, which is based on Illinois transactions between them. Temp-Air proposes that this Court should "dismiss ThermaPure's suit against Giertsen Company of Illinois." (Dkt. 76 at 14, FN 8). But Temp-Air has no say in whether ThermaPure can sue Giertsen, or where ThermaPure can sue Giertsen. Giertsen is in Illinois, so that case clearly belongs here. Giertsen has the right to bring its cross-claims against Temp-Air, and Temp-Air will have to litigate here, where the suit commenced.

Temp-Air also proposes that this Court "should stay [ThermaPure suit against Giertsen] until the dispute between ThermaPure and Temp-Air is resolved." (Dkt. 76 at 14, FN 8). Yet, there is no basis for this Court to stay the suit against Giertsen while waiting for a separate Temp-Air suit to be resolved. The Federal Circuit addressed this issue in <u>Kahn</u> v. <u>General Motors Corp.</u>, 889 F.2d

1078 (Fed. Cir. 1989). In Kahn, the Federal Circuit reversed a district court's decision to grant a stay under the "customer suit exception." In Kahn, General Motors, which sold infringing AM stereo receivers, had requested a stay of the case against it in favor of a later filed declaratory judgment action by Motorola, the General Motors supplier. Id. at 1078. Kahn provides three separate reasons why a stay of the Giertsen case would be reversible error: 1) Giertsen has multiple part suppliers; 2) a second suit against Temp-Air would not resolve all of the issues between Giertsen, ThermaPure and Temp-Air; and 3) Giertsen would not be bound by a result against Temp-Air. Id. at 1081-1082. *See also* Microsoft Corp. v. Toshiba America Information Systems, Inc., 2007 U.S. Dist. LEXIS 91550, *9 (E.D. Tex. Dec. 13, 2007).

First, while Temp-Air may be directly infringing in some circumstances by selling a complete kit to Giertsen, it is also inducing Giertsen to infringe by training Giertsen, and it is also infringing by selling component parts. Id. at 1081. Second, a suit against Temp-Air would not resolve all damages against Giertsen because Temp-Air has not accepted liability for Giertsen. Id. at 1081. In fact, Temp-Air has denied any direct business relationship with Giertsen whatsoever. (Dkt. 76 at 5). ThermaPure could not collect damages from Giertsen, based on a suit against Temp-Air in Minnesota, nor could it obtain an injunction against Giertsen. Moreover, the cross-claims Giertsen has brought against Temp-Air surely would not be resolved by a ThermaPure suit against Temp-Air in Minnesota. Third and last, Giertsen has not agreed to be bound by a separate suit against Temp-Air. Id. at 1082.

### A. The Transaction Or Occurrence Prong Is Satisfied Because Temp-Air And Giertsen Are Inextricably Linked[1]

Temp-Air relies on inapposite opinions. Judge Conlon's *sua sponte* Order from ADC Tech. v. LG Elecs., Case No. 10C1456, is almost completely devoid of facts other than the statement "The

---

[1] The legal section here is abbreviated as this issue was briefed in ThermaPure's Response in Opposition to Defendants Cambridge Engineering and RxHeat's Motion to Dismiss or Sever. Please see Dkt. 87 at pp. 2-7 for a more extensive description of legal standards.

only thread tying these disparate groups of defendants together is that they allegedly infringed the same patents." This is completely the opposite of the case here, where Temp-Air advertises for and induces Giertsen to infringe, and Geirtsen has brought a cross-claim. Temp-Air also cites Billingnetwork v. Avisena, Inc., 2010 WL 4565, No. 09 C 8002, where five separate defendants were severed. But Billingnetwork is very different from this case. Here, we have interrelated defendants where some manufacture, some distribute, some induce infringement, and some directly infringe. In fact, the court in Billingnetwork pointed out "This is not an instance of an appropriate joinder in which (say) one defendant manufactures, while another is a distributor of, the same infringing product." Id. at *1. Curiously, Temp-Air also cites, Magnavox Co. v. APF Electronics, Inc., 496 F. Supp. 29, 34 (N.D. Ill. 1980), which it paraphrased as, "joinder improper where defendants alleged to have infringed same patents sold different products." However, in that case the Court actually *denied* a motion to sever. In Magnavox, on plaintiff's motion, three separate patent infringement cases were combined in the interest of efficiency of administration of justice. Id. at 34.

Temp-Air cites three cases for the proposition that Giertsen's cross-claim does not overcome "improper" joinder.[2] But none of these cases involve a cross-claim for indemnification as there is between Giertsen and Temp-Air. Not only are Temp-Air and Giertsen related, but all of the defendants are bound together through numerous partnerships and/or business relationships. These relationships affect how the defendants are infringing the ThermaPure patents, for example, by combining equipment from multiple defendants. There would be no way to sever this suit cleanly because each defendant is related to at least one other defendant.

The "transaction or occurrence" prong is met under Fed.R.Civ.P. 20(a)(2). "The Seventh Circuit has favored liberal joinder of parties where appropriate." Rolex Watch, USA, Inc. v. Afzal,

---

[2] Spread Spectrum Screening, LLC v. Eastman Kodak, 2010 WL 3516106, *3 (N.D. Ill. Sept. 1, 2010); S.B. Designs v. Reebok Int'l, Ltd, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004), DirectTV, Inc. v. Davlantis, Case No. 03 C 3506, 2003 WL 22844401, at **5-6 (N.D. Ill. Nov. 25, 2003).

1992 U.S. Dist. LEXIS 2504, *3 (N.D. Ill. Mar. 5, 1992) (ruling in favor of joinder where the same private investigator discovered the same individual was allegedly violating both Rolex and Fendi's trademarks). In fact, "[c]ourts have consistently held that 'transaction' is a word of flexible meaning. It may comprehend a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." Sprint Communs. Co., L.P. v. Theglobe.com, Inc., 233 F.R.D. 615, 617 (D. Kan. 2006); MyMail, Ltd. v. Am. Online, Inc., 223 F.R.D. 455 (E.D. Tex. 2004) (denying motion to sever based on improper joinder of patent infringement defendants stating "[t]ransactions or occurrences satisfy the series of transactions or occurrences requirements of Rule 20(a) if there is some connection or logical relationship between the various transactions or occurrences").

The "logical relationship" between the parties is what most courts look to in weighing if the "transaction or occurrence" prong of Rule 20(a) is met. *See* Coll v. Abaco Operating LLC, 2009 U.S. Dist. LEXIS 78438, *12 (E.D. Tex. Sept. 1, 2009). There will be a logical relationship if there is some nucleus of operative facts or law. Coll, 2009 U.S. Dist. LEXIS 78438 at *12. The main factors courts use to determine if there is some nucleus of operative facts, and thus, a shared transaction or occurrence, in a patent case, include:

- ***The relationship the complaining party shares with the other parties***
- ***Whether the accused products differ dramatically***
- ***Whether the same patent is being asserted against each defendant***

All of these factors support keeping Temp-Air in the current lawsuit.

1. **Temp-Air Has A Relationship With Giertsen, And All Defendants Are Related To At Least One Other Defendant**

Temp-Air's relationship to Giertsen weighs in favor of joinder. B&R Plastics, 2009 U.S. Dist. LEXIS 107310 at *8 (applying a flexible definition of "transaction" and finding that the alleged infringers, who shared an importer, were logically related). Temp-Air provides equipment, training

and marketing to Giertsen. (Ex. 7); (Ex. 8). Further, defendants all work together in various ways to infringe the patents in suit. Here, the relationship between Temp-Air and Giertsen and the other defendants weighs in favor of keeping Temp-Air joined in this suit.

Finally, Temp-Air argues that some of the other defendants are competitors, and therefore they should not be joined to this suit. Yet, some courts have held that this factor weights *in favor* of the joinder. *See* Sprint, 2006 U.S. Dist. LEXIS 5294 at *6.

### 2. The Accused Products And Methods Are Very Similar

The accused products and methods of each defendant are very similar; thus, no defendant should be severed from this suit. MyMail, Ltd. v. Am. Online, Inc., 223 F.R.D. 455, *9 (E.D. Tex. 2004). Generally speaking, the '812 patent relates to making, selling, using, or inducing others to use a system of heaters, temperature indicating probes and filters to sanitize a structure, kill organisms and/or remove toxic substances from a structure. The patented technology can be used in both building restoration and pest eradication applications. Temp-Air is in the restoration business as well as the pest extermination business. The restoration industry includes drying out and sanitizing structures which have been flooded, remediating structures for mold and toxic chemicals. *All of the defendants have infringed in the area of restoration, including Temp-Air.* And at least Giertsen, Temp-Air, RxHeat, and Jon-Don have infringed in the pest eradication business as well.

While some of the defendants make the equipment, some sell the equipment, some induce others to practice the methods, and some practice the claimed methods themselves; they are all accused of infringing the ThermaPure patents. Here, the products include but are not limited to heaters, filters and probes which are either sold as a kit or used to practice a claimed method, are all extremely similar. In fact, when analyzing the heating element of the claims, Temp-Air's heaters are similar to those sold by Dri-Eaz, Servpro, DKI and RxHeat/Cambridge.

### 3. The Same Patent Claim Is Being Asserted Against Each Defendant

Each defendant is accused of infringing claims 4 and 6 of the '812 patent. The same patent and claims being asserted against multiple defendants weighs in favor of joinder. Oasis Indus., Inc. v. G.K.L. Corp., 1995 U.S. Dist. LEXIS 3513 (N.D. Ill. Mar. 20, 1995) (Magistrate Guzman recommending that the Court deny the motion to sever where different individuals were accused of infringing the same patent.)[3]. The fact that each defendant is accused of infringing at least the '812 patent weighs in favor of keeping all of these defendants in this suit.

### B. There Are Common Questions Of Law Or Fact[4]

Temp-Air does not contest this prong of Rule 20(a) in its brief, likely because there are numerous common questions of law and fact between Temp-Air and the other defendants. Of course, there are very important questions of law concerning all of the parties; namely, claim interpretation, patent validity and enforceability.

### III. JUDICIAL ECONOMY AND EXPEDIENCY ALSO SUPPORT THE JOINDER OF THESE DEFENDANTS

Very importantly, judicial economy would be served by keeping Temp-Air in the current suit. Judicial economy is a driving interest in Rule 20(a)(2). Alkot Indus., Inc. v. Takara Co., Ltd., 1985 U.S. Dist. LEXIS, *10 (N.D. Ill. May 8, 1985) ("Rule 20 has a recognized goal: 'to be read as broadly as possible whenever doing so is likely to promote judicial economy.") (citing Wright and Miller § 1653, at 276).

It simply makes no sense to file a new suit against Temp-Air, only to have one of two options occur. First, two cases progressing along the same track – with two Markman decisions,

---

[3] See also Adrain v. Genentec Inc., 2009 U.S. Dist. LEXIS, *7 (E.D. Tex. Sept. 22, 2009) (Ruling that defendants' actions arose out of the same transaction or occurrence because they each had a similar license plate recognition system which allegedly infringed the same claims on the same patent)

[4] The legal section here is abbreviated as this issue was briefed in ThermaPure's Response in Opposition to Defendants Cambridge Engineering and RxHeat's Motion to Dismiss or Sever. Please see Dkt. 87 at pp. 7-8 for a more extensive description of legal standards.

discovery tracks, and potentially two trials. *See* Sprint at *8 (Holding that interpreting the same patents in different suits gives rise to the prospect of inconsistent claim constructions and wasting scarce judicial resources). Second, a new suit which would mostly likely later be joined with the current suit after a motion to consolidate, since Fed.R.Civ.P. 42 allows this Court to consolidate actions having a common question of law or fact, which Temp-Air has essentially conceded here.

## IV. TRANSFER SHOULD BE DENIED AND THIS CASE SHOULD REMAIN IN THIS COURT

As discussed above, this case should not be severed. However, if this Court does decide to sever Temp-Air, it should keep this case in the Northern District of Illinois. If the Court decides to sever Temp-Air, it only makes sense to sever Giertsen as well (who has not asked to be severed), given that Temp-Air is being accused of, among other activities, inducing Giertsen to infringe the ThermaPure patents, and Giertsen has brought cross-claims. For these reasons alone, transfer to Minnesota is entirely improper, but there are other reasons to deny transfer.

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "District courts have broad discretion to grant or deny motions to transfer, and the burden is on the moving party to establish that transfer is warranted." MLR, LLC v. Kyocera Wireless Corp., 2005 U.S. Dist. LEXIS 43895, at *3 (N.D. Ill. April 6, 2005). This burden includes "establishing, by reference to particular circumstances, that the transferee forum is **clearly more convenient**." Rabbit Tanaka Corp. USA, v. The Paradies Shops, Inc., 598 F. Supp. 2d 836, 839 (N.D. Ill. 2009) (emphasis added) (citing Coffey v. Van Dorn Iron Works, 796 F.2d 217, 219-220 (7th Cir. 1986)). "It is not enough to demonstrate that the transferee forum is merely as convenient." Borgwarner, Inc. v. Hilite Int'l, Inc., 2008 U.S. Dist. LEXIS 62306, at *7-8 (N.D. Ill. Aug. 14, 2008).

The § 1404(a) factors are well-settled. "A transfer is proper if: (1) venue is proper in both the transferee and transferor courts; (2) it is for the convenience of the parties or witnesses; and (3) it is in the interest of justice." MLR, LLC, 2005 U.S. Dist. LEXIS 43895, at *3. "When evaluating the relative convenience of the parties and witnesses, the court considers: (i) the plaintiff's initial forum choice, (ii) the convenience of the witnesses, (iii) the relative ease of access to other evidence, (iv) the situs of material events, and (v) the relative convenience of the parties in litigating in the respective forums." Id. "The determination that a transfer is in the interest of justice focuses on the efficient administration of the court system … includ[ing] considering: (i) the relative familiarity of the courts with the applicable law, (ii) the relation of the respective forums with the issue in the case, and (iii) the relative congestion of the court dockets." Id. at *10. Consideration of these factors supports a denial of Temp-Air's motion.

### A. The Convenience Of Parties And Witnesses Compel Denial of Temp-Air's Motion To Transfer

Temp-Air repeatedly focuses on the portion of its business that is in Minnesota, while ignoring (or perhaps even denying to the point of making misrepresentations to the Court) ***that it has an office in Elgin, Illinois which conducts accused activities***, and that it is being accused of inducing Giertsen, an Illinois compnay to infringe ThermaPure's patents in Illinois.

#### 1. ThermaPure's Choice Of Forum Weighs Against A Transfer

Plaintiff ThermaPure is a California corporation, with its patents being infringed by various entities throughout this country. It chose to file suit in the Northern District of Illinois because most of the Defendants are located here, and much of the infringing activities occur here. Giertsen, Servpro Downers Grove, Disaster Kleenup International ("DKI") and Jon-Don are all located in Illinois. This suit is focused in part on the restoration industry, and the Northern District of Illinois is the nation's central hub for the restoration industry, with DKI, "North America's largest disaster restoration company" (http://www.disasterkleenup.com/about/) located here, as well as Jon-Don,

(to ThermaPure's knowledge, one of the nation's largest supplier's to the restoration and pest control industries).

The adoption of the new patent rules in this district were another reason for ThermaPure to choose this forum. Thus, even though ThermaPure is not located here, it chose this forum for a reason, and, its forum choice is entitled to weight. Widen v. Advance Group, Inc., 2004 U.S. Dist. LEXIS, 4006 at *3 (N.D. Ill. Mar. 12, 2004). Accordingly, though deference to ThermaPure's choice may be lessened, this factor still favors denial of a transfer.

### 2. **Minnesota Is Not "Clearly More Convenient" For All Parties And Witnesses**

As stated previously, because it makes the most sense for ThermaPure to litigate against Temp-Air and Giertsen simultaneously, this factor should be considered in light of all three parties. There is nothing convenient about litigating in Minnesota for ThermaPure or Giertsen.

Temp-Air cites six current employees with alleged knowledge of its products as potential witnesses in this action. (Dkt. 76 at 4-5). But these employees are not the concern. "[T]he primary concern is not the convenience to the parties but the convenience to the witnesses - non-party witnesses, in particular." 21 srl v. Newegg Inc., 2010 U.S. Dist. LEXIS 28524, at *7 (N.D. Ill. Mar. 24, 2010). *See also* Kolcraft Enters., Inc. v. Chicco USA, Inc., 2009 U.S. Dist. LEXIS 101605, at *8 (N.D. Ill. Oct. 23, 2009) ("the Court must dispel the parties' concerns regarding the alleged inconvenience to their employee witnesses. It is presumed that these particular witnesses, who are within the control of the parties, will appear voluntarily when called upon to do so.") (denying transfer). In fact, the only non-party witness Temp-Air has identified, the co-inventor of the '812 patent, lives in California.

Importantly, ThermaPure will be litigating this suit in the Northern District of Illinois, as will Giertsen, which also is suing Temp-Air. It is not more convenient for ThermaPure and Giertsen to make their witnesses available twice, especially for Giertsen which is located in Illinois. Transfer is

not appropriate if it "merely transforms an inconvenience for one party into an inconvenience for the other party." Brandon Apparel Group, Inc. v. Quitman Mfg. Co., Inc., 42 F. Supp. 2d 821, 834 (N.D. Ill. Mar. 24, 2010).

### 3. The Relative Ease Of Access To Other Evidence Weighs Against A Transfer

A large part of the evidence that will be important in this case will be the evidence of direct infringement by service providers whom Temp-Air or the other defendants have induced to infringe. Because Giertsen is a direct infringer whom Temp-Air has induced to infringe, the location of Giertsen and its large equipment are pivotal. Giertsen, of course, is located in Illinois.

Regarding Temp-Air's documents, in the electronic era, this factor is given much less significance:

> [a]ccess to sources of proof other than witnesses is not likely to be an issue. In this day and age, transferring documents from one district to another is commonplace and, given the widespread use of digital imaging in big-case litigation, no more costly than transferring them across town.

Rabbit Tanaka Corp. USA, 598 F. Supp. at 840; *See* Borgwarner, Inc. v. Hilite Int'l, Inc., 2008 U.S. Dist. LEXIS 62306, at *11 (N.D. Ill. Aug. 14, 2008) ("Evidence will presumably have to be transported regardless of which forum is ultimately selected. For this reason, availability of evidence also fails to counsel in favor of transfer."). Accordingly, the location of Temp-Air's documents does not favor transfer, and the location of Giertsen's equipment weighs against a transfer.

### 4. The Situs Of Material Events Weighs Against A Transfer

Temp-Air is being accused of indirect infringement (in addition to direct infringement) the location of the direct infringement is important. The direct infringement is done by Temp-Air service providers. Temp-Air provides a link to all of its service providers for its Thermal Remediation on its website. http://www.thermalremediation.com/bed-bugs/find-a-service.aspx. (Ex. 7). There is a very large number of service providers listed in Illinois. In fact, only Iowa and Wisconsin have more service providers listed. Also, there are as many service providers in Illinois as

there are in Minnesota. Id. See IP Innovation L.L.C., 2005 U.S. Dist. LEXIS 11892, at *6 ("While the infringement allegedly occurred throughout the country, Panasonic admits the accused products were sold in this judicial district. Mot. at 10. Therefore, this factor [(site of material events)] is neutral."). Accordingly, this factor is merely neutral. Id.

### B. The Interests Of Justice Compel Denial Of Temp-Air's Motion To Transfer

The interests of justice include: "(i) the relative familiarity of the courts with the applicable law, (ii) the relation of the respective forums with the issue in the case, and (iii) the relative congestion of the court dockets." MLR, LLC, 2005 U.S. Dist. LEXIS 43895, at *10. Regarding the Courts' familiarity with patent law, this consideration is neutral.

Temp-Air seeks to downplay the interest this District has in this matter, but the fact is that this District has a significant interest. Temp-Air has an office here, offers bed bug equipment for sale here, advertises for and links to service providers here, and offers to sell bed bug equipment on its website which is targeted to residents in the Northern District. http://www.temp-air.com/. "This District has stated that 'the Northern District of Illinois has an interest in protecting its citizens from infringement and preventing infringers from operating within its boundaries.'" Borgwarner, Inc., 2008 U.S. Dist. LEXIS 62306, at *16. Though Temp-Air's primary places of business may be in Minnesota, Illinois nevertheless holds a significant interest.

Not only does the Northern District of Illinois have a significant interest in this litigation, but the District of Minnesota does not have local patent rules like the Northern District of Illinois now has. These new local rules were specifically designed to eliminate some of the most time-consuming and expensive disputes common to patent law cases including Markman protocol, protective orders, scheduling, and disclosures. They are also designed to enable that case to be tried in around two years. Accordingly, the interests of justice weigh against transfer.

## V. CONCLUSION

For all of the foregoing reasons, ThermaPure respectfully requests that the Court deny Defendant Temp-Air, Inc's Motion to Dismiss or Sever.

Respectfully submitted,

/s/ Tahiti Arsulowicz
Paul K. Vickrey
Patrick F. Solon
Frederick C. Laney
Tahiti Arsulowicz
NIRO, HALLER & NIRO
181 W. Madison, Suite 4600
Chicago, IL 60602
(312) 236-0733
Fax: (312) 236-3137
Email: vickrey@nshn.com
Email: solon@nshn.com
Email: laney@nshn.com
Email: Arsulowicz@nshn.com

Attorneys for Plaintiff
ThermaPure, Inc.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on November 2, 2010 the foregoing

**THERMAPURE'S OPPOSITION TO DEFENDANT TEMP-AIR, INC.'S MOTION TO SEVER AND TRANSFER**

was filed with the Clerk of Court pursuant the Court's CM/ECF procedures. The foregoing was also served upon the following counsel of record via electronic transmission.

Hillary P. Krantz
John Z. Lee
FREEBORN & PETERS LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60606
(312) 360-6455
Email: hkrantz@freebornpeters.com
Email: jlee@freebornpeters.com

Michael E. Florey (*Pro Hac Vice*)
FISH & RICHARDSON P.C.
60 South Sixth Street, Suite 3200
Minneapolis, MN 55402
(612) 335-5070
Email: florey@fr.com

**Attorneys for Temp-Air, Inc.**

Brandy R. McMillion
PERKINS COIE LLP
131 S. Dearborn, Suite 1700
Chicago, Illinois 60603-5559
(312) 324-8587
Email: bmcmillion@perkinscoie.com

Jerry A. Riedinger (*Pro Hac Vice*)
Tyler C. Peterson (*Pro Hac Vice*)
PERKINS COIE LLP
1201 Third Avenue
Seattle, WA 98101
(206) 359-8664
Email: jriedinger@perkinscoie.com
Email: tylerpeterson@perkinscoie.com

**Attorneys for Dri-Eaz Products, Inc.**

Charles L. Philbrick
Karen L. Blouin
RATHJE & WOODWARD LLC
300 East Roosevelt Road, Suite 300
Wheaton, Illinois 60187
(630) 668-8500
Email: cphilbrick@rathjewoodward.com
Email: kblouin@rathjewoodward.com

**Attorneys for Giertsen Company of Illinois, Inc.**

Jeffrey H. Bunn
Megan M. Mathias
HORWOOD MARCUS & BERK CHARTERED
180 North LaSalle Street
Suite 3700
Chicago, Illinois 60601
(312) 606-3200
Email: jbunn@hmblaw.com
Email: mmathias@hmblaw.com

**Attorneys for Disaster Kleenup International, Inc.**

Mark A. Paskar
Kara E. F. Cenar
Mariangela M. Seale
BRYAN CAVE LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
(312) 602-5000
Email: mapaskar@bryancave.com
Email: kara.cenar@bryancave.com
Email: merili.seal@bryancave.com

Randy J. Soriano (*Pro Hac Vice*)

- 2 -

| | |
|---|---|
| Thomas I. Ross<br>Julianne M. Hartzell<br>Benjamin T. Horton<br>MARSHALL, GERSTEIN & BORUN LLP<br>233 S. Wacker Drive, 6300 Willis Tower<br>Chicago, Illinois 60606<br>(312) 474-6300<br>Email: tross@marshallip.com<br>Email: jhartzell@marshallip.com<br>Email: bhorton@marshallip.com<br><br>**Attorneys for Jon-Don, Inc.** | Matthew L. Cutler (*Pro Hac Vice*)<br>HARNESS DICKEY & PIERCE, P.L.C.<br>7700 Bonhomme, Suite 400<br>St. Louis, MO 63105<br>(314) 726-7500<br>Email: rsoriano@hdp.com<br>Email: mcutler@hdp.com<br><br>R. Thomas Avery (*Pro Hac Vice*)<br>BLITZ, BARDGETT & DEUTSCH, LC<br>120 South Central Avenue<br>St. Louis, MO 63105<br>(314) 863-1500<br>Email: rtavery@blitzbardgett.com<br><br>**Attorneys for RxHeat, LLC and Cambridge Engineering, Inc.** |

I certify that all parties in this case are represented by counsel who are CM/ECF participants.

/s/ Tahiti Arsulowicz
Attorneys for Plaintiff
ThermaPure, Inc.
NIRO, HALLER & NIRO