# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| THERMAPURE, INC., | ) |
|     Plaintiff, | ) ) ) ) No. 10-cv-4724 |
| v. | ) ) Judge Joan H. Lefkow |
| TEMP-AIR, INC., GIERTSEN COMPANY OF ILLINOIS, INC., SERVPRO INDUSTRIES, INC., MALLORY SUN, LLC a/k/a SERVPRO OF DOWNERS GROVE AND OAK BROOK, DISASTER KLEENUP INTERNATIONAL, INC., DRI-EAZ PRODUCTS, INC., RXHEAT, LLC, CAMBRIDGE ENGINEERING, INC., and JON-DON, INC., | ) ) ) ) ) ) ) ) ) |
|     Defendants. | ) |

## OPINION AND ORDER

ThermaPure, Inc. ("ThermaPure") filed a claim for patent infringement against Temp-Air, Inc. ("Temp-Air"), Giertsen Company of Illinois, Inc. ("Giertsen Illinois"), Servpro Industries, Inc. ("Servpro"), Mallory Sun, LLC, doing business under the name of Servpro of Downers Grove and Oak Brook ("Servpro Downers Grove"), Jon-Don, Inc. ("Jon-Don"), Dri-Eaz Products, Inc. ("Dri-Eaz"), RxHeat, LLC ("RxHeat"), and Cambridge Engineering, Inc. ("Cambridge").[1] Before the court are Cambridge and RxHeat's motion to dismiss or sever claims [#57] and Temp-Air's motion to sever and transfer claims to the District of Minnesota [#75]. For the following reasons, the motions are granted.

---

[1] Defendant Disaster Kleenup International, Inc. ("DKI") was dismissed without prejudice by stipulation of the parties on December 22, 2010 [#127, 128].

## BACKGROUND[2]

ThermaPure is a California corporation that owns United States Patent No. 6,327,812 entitled "Method Of Killing Organisms And Removal Of Toxins In Enclosures" ("the '812 Patent") and Patent No. 7,690,148 entitled "Method Of Treating For Pests" ("the '148 Patent"). ThermaPure is in the business of using heat to remediate homes and commercial buildings so that they are free of mold, viruses, bacteria, insects, and rodents. Its patented processes are also used for construction dryout and to remove toxic chemicals and Volatile Organic Compounds. *See ThermaPure Heat*, http://www.thermapure.com (last accessed Dec. 15, 2010).

Temp-Air is a Minnesota corporation with its headquarters in Minnesota. It also has an office in Elgin, Illinois. Temp-Air provides pest control through a form of heat treatment called Thermal Remediation. *See Thermal Remediation from Temp-Air*, http://www.thermalremediation.com (last accessed Dec. 15, 2010).[3] Temp-Air's products and methods can be used to treat bed bugs, wood destroying organisms, and insects that live in warehouses, food plants, bins, and silos. *Id.* Included among Temp-Air's products are "bed bug trailers" that contain heat systems and fans that can be attached to a standard truck and used for extermination of bed bugs. Temp-Air's Mot. to Sever and Transfer at 3. ThermaPure alleges that Temp-Air has infringed the '812 patent and the '148 patent by making, using, selling and/or offering heat remediation equipment, instruction, and services.

---

[2] Unless otherwise noted, the following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motions.

[3] ThermaPure's complaint includes little information about the defendants other than their alleged citizenship, location, and the name of the patent they infringed. The court has taken judicial notice of the information provided on the defendants' websites, as cited and summarized in Temp-Air's motion to sever and transfer. ThermaPure has not objected to Temp-Air's characterization of the defendants' businesses.

Giertsen Illinois is an affiliate of the Giertsen Company ("Giertsen Minnesota"), a Minnesota corporation that provides restoration services. *See* Giertsen Illinois's Cross Claims ¶ 3; Temp-Air's Mot. to Sever and Transfer Exs. B & D. Giertsen Minnesota purchased a bed bug trailer from Temp-Air in 2008. Giertsen Illinois's Cross Claims ¶ 3; Temp-Air's Mot. to Sever and Transfer Exs. B & D. Giertsen Minnesota is identified as a thermal remediation treatment service provider on Temp-Air's website. *See* Bed Bugs – Find a Service Provider, *Thermal Remediation from Temp-Air*, http://www.thermalremediation.com/bed-bugs/find-a-service.aspx (last accessed Dec. 15, 2010). ThermaPure alleges that Giertsen Illinois has infringed the '148 patent by making, using, selling and/or marketing heat technology remediation services.

RxHeat is a Missouri corporation with its headquarters in Missouri.[4] RxHeat provides heating services and markets products that relate to bed bug remediation, document recovery, new construction, temporary heating needs, and water restoration. *See RxHeat Prescriptive Heating Solutions*, http://www.rxheat.com (last accessed Dec. 15, 2010). ThermaPure alleges that RxHeat has infringed the '812 patent and the '148 patent by offering equipment, instruction, and heat remediation services through its website and at trade shows. Cambridge is an affiliate of RxHeat that designs, develops, and manufactures heating systems. *See id.* Cambridge is also a Missouri corporation with its headquarters in Missouri. ThermaPure contends that Cambridge has infringed the '812 patent by offering equipment, instruction, and services at trade shows.

Jon-Don is an Illinois corporation with its headquarters in Roselle, Illinois. Jon-Don sells supplies for carpet cleaning, janitorial service, flood and fire restoration and mold remediation. *See Jon-Don - Carpet Cleaning, Janitorial and Restoration Supplies*, http://www.jondon.com

---

[4] The complaint states that "RxHeat products are distributed –" but the sentence is not finished. It appears that the copy of the complaint that was filed with the court is incomplete.

(last accessed Dec. 15, 2010). Jon-Don sells the products of RxHeat and Cambridge, as well as other defendants. *Id.* ThermaPure alleges that Jon-Don has infringed the '812 patent and the '148 patent by offering equipment, instruction, and/or services on its website and at trade shows.

ServPro and ServPro of Downers Grove are restoration service companies that provide mold remediation using heat, among other services. *See ServPro - Fire & Water Cleanup & Restoration*, http://www.servpro.com (last accessed Dec. 15, 2010). ServPro is a Nevada corporation with its principal office in Tennessee. ServPro Downers Grove is a franchisee of ServPro and is an Illinois LLC with an office in Chicago, Illinois. ThermaPure alleges that ServPro and ServPro Downers Grove have infringed the '812 patent by offering equipment, instruction, and/or services through their websites and at trade shows.

Dri-Eaz is a Washington corporation with its corporate headquarters in Washington. Dri-Eaz is a manufacturer, seller, and lessor of HVAC and heat remediation equipment. *See Dri-Eaz Products*, http://www.drieaz.com (last accessed Dec. 15, 2010). ThermaPure alleges that Dri-Eaz has infringed the '812 patent by offering equipment, instruction, and/or services through its websites and at trade shows.

## DISCUSSION

### I. Joinder Under Rule 20(a)

Federal Rule of Civil Procedure 20(a) permits parties to be joined as defendants where (1) a claim is asserted against them "with respect to or arising out of the same transaction, occurrence, or series of transactions and occurrences," *and* (2) "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A)–(B). The purpose of the rule is "to promote trial convenience and to expedite the resolution of disputes, thereby preventing multiple lawsuits." 7 Charles A. Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure* § 1652. Here, the parties dispute whether ThermaPure's claims

against all of the defendants arise out of the same transaction or occurrence. "In ascertaining whether a particular factual situation constitutes a single transaction or occurrence for the purpose of Rule 20, a case by case approach is generally pursued." *Gorence* v. *Eagle Food Ctrs., Inc.*, No. 93 C 4862, 1996 WL 734955, at *3 (N.D. Ill. Dec. 19, 1996) (quoting *Mosely* v. *Gen. Motors Corp.*, 497 F.2d 1330, 1332 (8th Cir. 1974)). Courts have interpreted the word "transaction" flexibly. *Id.* "Accordingly, all 'logically related' events entitling a person to institute a legal action against another generally are regarded as comprising a transaction or occurrence." *Id.* (quoting *Mosely*, 497 F.2d at 1333). If parties have been improperly joined as defendants, the court may sever the claims pursuant to Rule 21. Rule 21 does not, however, provide for dismissal of the entire action due to improper joinder.

RxHeat and Cambridge assert that the complaint fails to allege a common transaction or occurrence as to all of the defendants and that they have no relationship with any of the other defendants except for Jon-Don, which sells some of their products on its website. In support of these assertions, they submit declarations from the President and Chief Executive Officer of Cambridge and the President of RxHeat. The declarations aver that neither RxHeat nor Cambridge makes, uses, sells, or offers to sell any products of any defendant in this case other than Jon-Don. Kramer Decl. ¶¶ 2–9; Braun Decl. ¶¶ 2–9. The declarations further state that although RxHeat and Cambridge have an on-going business relationship with Jon-Don, Jon-Don also has an on-going business relationship with other co-defendants and Jon-Don does not market the same products for the other defendants as it markets for RxHeat and Cambridge. Kramer Decl. ¶ 9; Braun Decl. ¶ 9. RxHeat and Cambridge admit that they are related entities and that joinder is proper with respect to them only. They also admit that joinder might be proper with respect to RxHeat, Cambridge, and Jon-Don. Jon-Don has not opposed or supported RxHeat and Cambridge's motion.

Temp-Air similarly asserts that it has not sold any products or conducted any business with the other defendants. In support of its motion, Temp-Air has submitted the declaration of its Chief Executive Officer. The declaration avers that Temp-Air has not sold products to any other defendant in this case. Korn Decl. ¶¶ 10–11. Temp-Air also has not purchased products from the other defendants, who are either competing manufacturers or purchase products from Temp-Air's competitors. *Id.* Temp-Air sold one bed bug trailer to Giertsen Minnesota and admits that its website includes a link to Giertsen Minnesota on a page titled "Bed Bug Service Providers." *See id.* ¶¶ 9–10; Temp-Air Mot. to Sever Ex. D (Invoice); Bed Bugs – Find a Service Provider, *Thermal Remediation from Temp-Air*, http://www.thermalremediation.com/bed-bugs/find-a-service.aspx.[5] The web page asserts that Giertsen provides bed bug services in Illinois. *Id.* Giertsen Illinois has not opposed or supported Temp-Air's motion.

ThermaPure's responses to the motions under consideration focus on three factors that, it asserts, favor joinder: (1) the similarities between the accused products and methods, (2) the relationship between the defendants, and (3) the fact that the same patent is being asserted against each defendant. These factors are indeed dispositive in this case, but all except the last weigh against joinder. With respect to the first factor, ThermaPure does not deny that the defendants manufacture, market and sell different products and methods. ThermaPure's complaint, moreover, does not include the name of the accused products or methods or a description of them so that they might be identified. In its responses to the motions to sever, ThermaPure again fails to identify or clearly describe the various defendants' products and

---

[5] Temp-Air has reviewed the '812 and the '148 patent and surmises that ThermaPure can only be accusing its bed bug trailers of infringement.

methods.[6] The only accused product that ThermaPure identifies with specificity is the filter for the "Omega Supreme Pest Vac" that is included as part of Temp-Air's bed bug packages. Yet ThermaPure does not explain how, if at all, the Omega Supreme Pest Vac filter is similar to the products manufactured or sold by other defendants.[7] Nor do ThermaPure's statements that multiple defendants have infringed "in the area of restoration" or "in the pest eradication business" establish similarities between the accused products and methods such that ThermaPure's claims can be said to arise out of a common transaction or occurrence. Therefore the fact that the defendants manufacture, sell, and market different products and methods weighs against joinder. *See Androphy* v. *Smith & Nephew, Inc.*, 31 F. Supp. 2d 620, 623 (N.D. Ill. 1998) ("[C]laims of infringement against unrelated defendants, involving different machines, should be tried separately against each defendant." (quoting *New Jersey Mach. Inc.* v. *Alford Indus. Inc.*, Civ. A. No. 89-1879(JCL), 1991 WL 340196, at *2 (D.N.J. Oct. 7, 1991)).

With respect to the relationship between the parties, the complaint again lacks any relevant information. In its opposition to the motions under consideration, ThermaPure asserts that defendants have "numerous partnerships and business relationships" that "affect" the alleged patent infringements by, for example, "combining equipment from multiple defects." ThermaPure has submitted a diagram that purports to show that the various defendants sell products to each other and are affiliated with each other. ThermaPure does not, however, specify how the relationships that are depicted in the diagram give rise to the claims against the defendants. Based on the record before the court, it appears that the only relevant link between

---

[6] ThermaPure states that the accused products "include but are not limited to heaters, filters and probes," but does not identify the heaters, filters or probes that it is referring to.

[7] ThermaPure claims that Temp-Air's heaters are "similar" to those sold by Dri-Eaz, ServPro, and RxHeat/Cambridge but does not explain the basis for this assertion. Temp-Air, for its part, denies that its heaters are similar to other defendants' products.

7

RxHeat or Cambridge and the other defendants is the fact that Jon-Don sells products for RxHeat, Dri-Eaz and possibly other defendants on its website. The fact that two different companies sell different products on Jon-Don's website does not compel the conclusion that the two companies are also related to each other, particularly since Jon-Don sells products from many companies on its website. *See DirecTV, Inc.* v. *Davlantis*, No. 03 C 3506, 2003 WL 22844401, at *5–6 (N.D. Ill. Nov. 26, 2003) (allegation that defendants purchased devices from the same shipper did not justify joinder). ThermaPure, moreover, does not contest RxHeat's assertion that the products marketed by Jon-Don for other defendants are different from the products that it markets for RxHeat. *See* Braun Decl. ¶ 9.

Temp-Air, in turn, denies that it has had any dealings with Giertsen Illinois, the named defendant in this case, and asserts that only Giertsen Minnesota has been a Temp-Air customer. *See* Korn Decl. ¶ 11. Temp-Air also asserts that the fact that Giertsen Minnesota is listed on its website as a "bed bug service provider" merely indicates that Giertsen Minnesota is a customer of Temp-Air, not that Giertsen Minnesota is a licensed service provider of Temp-Air products. *See* Second Korn Decl. ¶ 1.[8] Thus Temp-Air does not have any contacts with the other defendants that are relevant to joinder. ThermaPure's assertion that its claims against Temp-Air and Giertsen Illinois must be "related" because Giertsen Illinois has filed a cross claim against Temp-Air is without merit. The cross claim, which alleges that Giertsen Illinois should be indemnified for a breach of the implied warranty against infringement, depends solely upon the outcome of the dispute between Temp-Air and ThermaPure and does not establish a common transaction or occurrence under Rule 20(a). In sum, while it appears that *some* of the defendants have business relationships that would justify joinder, ThermaPure has not alleged in its

---

[8] Temp-Air asserts that it does not license its products and that the service providers listed on its website may use its competitors' products as well.

8

complaint or otherwise explained how *all* of the defendants are related with respect to its claims against them. Therefore this factor also weighs against joinder.

Finally, ThermaPure emphasizes that all of the defendants are alleged to have infringed the same patent. Courts in this district, however, have consistently held that Rule 20(a)'s requirement for a common transaction or occurrence is not satisfied where multiple defendants are merely alleged to have infringed the same patent or trademark. *See Spread Spectrum Screening, LLC* v. *Eastman Kodak Co.*, No. 10 C 1101, 2010 WL 3516106, at *2 (N.D. Ill. Sept. 1, 2010); *Billingnetwork Patent, Inc.* v. *Avisena, Inc.*, No. 09 C 8002, 2010 WL 45765, at *1 (N.D. Ill. Jan. 4, 2010); *SB Designs* v. *Reebok Int'l, Ltd.*, 305 F. Supp. 2d 888, 892 (N.D. Ill. 2004); *MLR, LLC* v. *U.S. Robotics Corp.*, No. 02 C 2898, 2003 WL 685504, at *2 (N.D. Ill. Feb. 26, 2003); *Androphy*, 31 F. Supp. 2d at 623; *Magnavox Co.* v. *APF Elecs., Inc.*, 496 F. Supp. 29, 34 (N.D. Ill. 1980); *see also Siemens Aktiengesellschaft* v. *Sonotone Corp.*, 370 F. Supp. 970, 973 (N.D. Ill. 1973). ThermaPure's allegations against the defendants are not sufficient to justify joinder absent additional commonalities regarding their method of infringement.

The court is mindful that "judicial economy" is one of the objectives of Rule 20 and that concerns about efficiency have prompted some courts to permit joinder solely on the grounds that multiple defendants were alleged to have infringed the same patent. *See Magnavox*, 496 F. Supp. at 34; *Sprint Comms. Co., LP* v. *Theglobe.com, Inc.*, 233 F.R.D. 615, 617–18 (D. Kan. 2006); *MyMail, Ltd.* v. *Am. Online, Inc.*, 223 F.R.D. 455, 456–57 (E.D. Tex. 2004). ThermaPure argues that the court should follow these cases and allow joinder for efficiency's sake here. ThermaPure's emphasis on this line of reasoning is fatally undermined by its piecemeal divulgement of the relevant facts, however. Specifically, even though ThermaPure acknowledges that the court must analyze the similarities and differences between the accused

9

products and methods, it has yet to clearly identify or describe the allegedly infringing products or methods. If the court were to allow ThermaPure's claims to go forward together against all of the defendants, only to discover later that the products or methods differ significantly, then ThermaPure would benefit from its own recalcitrance at defendants' and the court's expense.

For the foregoing reasons, ThermaPure has not shown that its claims against all of the defendants "aris[e] out of the same transaction [or] occurrence." Fed. R. Civ. P. 20(a)(2)(B). RxHeat, Cambridge, and Temp-Air's motions to sever will be granted.

## II. Temp-Air's Motion Transfer

Temp-Air asserts that the claims against it should be transferred to the District of Minnesota and that the proceedings against Giertsen Illinois should be stayed pending the outcome of the Minnesota litigation. Temp-Air's motion to transfer venue is governed by 28 U.S.C. § 1404(a), which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As a practical matter, "[t]he moving party must show that (1) venue is proper in this district; (2) venue [and jurisdiction are] proper in the transferee district; (3) the transferee district is more convenient for both the parties and witnesses; and (4) transfer would serve the interest of justice." *Gueorguiev* v. *Max Rave, LLC*, 526 F. Supp. 2d 853, 856 (N.D. Ill. 2007) (citing *Bryant* v. *ITT Corp.*, 48 F. Supp. 2d 829, 832 (N.D. Ill. 1999)). The moving party bears the burden of demonstrating that transfer is "clearly more convenient." *Heller Fin. Inc.* v. *Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (quoting *Coffey* v. *Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986)). Since the weighing of factors for and against transfer necessarily involves a large degree of subtlety and latitude, the decision to transfer is committed to the sound discretion of the trial court. *Coffey*, 796 F.2d at 219; *see also Van Dusen* v. *Barrack*, 376 U.S. 612, 622, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (noting that the

remedial purpose of § 1404(a) requires "individualized, case-by-case consideration of convenience and fairness"). Each factor should be given the appropriate weight under the circumstances of the case. *Gueorguiev*, 526 F. Supp. 2d at 857.

The parties do not argue that venue is improper in this district or the District of Minnesota. Instead, the parties dispute whether transfer is warranted for the convenience of the parties and witnesses and whether transfer serves the interest of justice. For the following reasons, Temp-Air's motion will be granted.

### A. Convenience of the Parties and Witnesses

Factors the court considers and weighs in evaluating the convenience of the parties and witnesses include (1) the plaintiff's choice of forum, (2) the situs of material events, (3) the relative ease of access to sources of proof, (4) the convenience of the witnesses, and (5) the convenience of the parties in litigating in the respective forums. *See, e.g.*, *Brandon Apparel Group, Inc.* v. *Quitman Mfg. Co.*, 42 F. Supp. 2d 821, 833 (N.D. Ill. 1999) (citations omitted).

#### 1. Plaintiff's Choice of Forum and Situs of Material Events

Under § 1404(a), a plaintiff's choice of forum is generally entitled to substantial deference, particularly where the chosen forum is the plaintiff's home forum. *Id.*; *see also United Airlines, Inc.* v. *Mesa Airlines, Inc.*, 8 F. Supp. 2d 796, 798 (N.D. Ill. 1998) (unless the balance weighs strongly in favor of transfer, plaintiff's choice should not be disturbed). But "plaintiff's choice of forum has reduced value where the forum lacks any significant contact with the underlying cause of action . . . . In such a case, it becomes just one of many factors to be viewed by the Court when making its determination of convenience." *Hotel Constructors, Inc.* v. *Seagrave Corp.*, 543 F. Supp. 1048, 1050 (N.D. Ill. 1982) (citations omitted).

The Northern District of Illinois is not the home forum for ThermaPure or Temp-Air. Temp-Air asserts that all of the material events occurred in Burnsville, Minnesota, the location

11

of Temp-Air's headquarters. Specifically, Temp-Air's products are manufactured in Minnesota and sold and shipped from Minnesota. Korn Decl. ¶¶ 4–5. Temp-Air has not provided any training for any of the other defendants in Illinois. Second Korn Decl. ¶ 2. Nor has Temp-Air sold products to any of the other defendants in Illinois, including Giertsen Illinois. Korn Decl. ¶¶ 10–11. Temp-Air also asserts that its office in Elgin, Illinois merely rents and repairs HVAC equipment and has nothing to do with the present suit. ThermaPure contends that its chosen forum is entitled to deference because Giertsen Illinois, ServPro Downers Grove, and Jon-Don are located in this district and because the suit is "focused in part on" the restoration industry, which is located primarily in this district. ThermaPure also contends that the situs of material events is in this district because Temp-Air has an office in Illinois, Temp-Air's website includes links to service providers in Illinois, and Temp-Air sells products to these Illinois service providers and provides them with training.

The situs of material events is the District of Minnesota. ThermaPure's contention that the material events occurred in Illinois because Temp-Air sold products to customers in Illinois is unavailing. *See, e.g.*, *Illinois Computer Research, LLC* v. *HarperCollins Publishers, Inc.*, No. 10 C 5021, 2010 WL 4877501, at *2 (N.D. Ill. Nov. 22, 2010) (where infringing acts took place in numerous districts around the country, plaintiff's choice of forum not entitled to much weight) (citing *Rabbit Tanaka Corp. USA* v. *Paradies Shops, Inc.*, 598 F. Supp. 2d 836, 840 (N.D. Ill. 2009)). Furthermore, the only Illinois customer that ThermaPure identifies by name is Giertsen Illinois, and Temp-Air vigorously denies that it has sold any products to Giertsen. Minnesota, on the other hand, is where Temp-Air develops, manufactures, and sells the accused products and is the location of the evidence that would give rise to Temp-Air's liability. *See, e.g.*, *Cooper Bauck Corp.* v. *Dolby Labs., Inc.*, No. 05 C 7063, 2006 WL 1735282, at *5 (N.D. Ill. June 19, 2006) ("[I]n patent infringement cases, the location of the infringer's principal place of business

is often the critical and controlling consideration because such suits often focus on the activities of the alleged infringer, its employees, and its documents, rather than upon those of the plaintiff." (internal quotation marks and citations omitted)). Because the situs of the material events is not in this district, ThermaPure's choice of forum will not be accorded substantial deference but will instead be considered as one factor weighing against transfer. The fact that the situs of material events is in the District of Minnesota weighs in favor of transfer.

### 2. Ease of Access to Sources of Proof

Temp-Air argues that transfer is justified in part because Temp-Air's documents are located in Minnesota. This assertion will not be given great weight because documents are presumed to be easily transportable. *See Unomedical A/S* v. *Smiths Med. MD, Inc.*, No. 09-cv-4375, 2010 WL 2680144, at *2 (N.D. Ill. June 30, 2010) (rejecting similar argument because, "[i]n patent cases, no matter where the trial is held, all relevant documents – regarding both the patented invention and the allegedly infringing technology – will have to be collected, copied, and sent to the offices of trial counsel" (citations omitted) (internal quotation marks omitted)); *Boyd* v. *Snyder*, 44 F. Supp. 2d 966, 971 (N.D. Ill. 1999) (noting that documents and records are easily transportable). Temp-Air also asserts that the bed bug trailers are "very large and costly to transport." This assertion is inconsistent with Temp-Air's assertion that the trailers can be "pulled by a standard pickup truck." Thus, although it would be easier for a jury in Minnesota to view the bed bug trailers, it would not be prohibitively expensive to transport a trailer to this district. *See Deere & Co.* v. *Howard Price Turf Equip., Inc.*, No. 99 C 4169, 1999 WL 1101215, at *5 (N.D. Ill. Dec. 1, 1999) (cost of transporting a "bulky vehicle" was not so significant as to justify transfer). Taking all of these facts into consideration, this factor weighs slightly in favor of transfer.

### 3. Convenience of the Witnesses

"The convenience of the witnesses is often viewed as the most important factor in the transfer balance." *Brandon Apparel,* 42 F. Supp. 2d at 834 (quoting *Rose* v. *Franchetti*, 713 F. Supp. 1203, 1214 (N.D. Ill. 1989)). In evaluating this factor, the court considers the number of witnesses located in each forum and the nature, quality, and importance of their testimony. *See Rohde* v. *Cent. R.R. of Ind.*, 951 F. Supp. 746, 748 (N.D. Ill. 1997) ("[T]he Court considers not only the number of witnesses located in each forum but also the nature and importance of their testimony. [The movant] bears the burden of establishing who [the] witnesses are, what their testimony will be, and how vital that testimony will be to the case." (citations omitted) (internal quotation marks omitted)). The determination of venue should not depend on which party submits a longer witness list. *Brandon Apparel*, 42 F. Supp. 2d at 834.

Although Temp-Air has identified six employee witnesses who reside in Minnesota, these witnesses are presumed to be under its control and transfer is not required solely for their convenience. *See, e.g.*, *Bullard* v. *Burlington N. Santa Fe Ry. Co.*, No 07 C 6883, 2008 WL 4104355, at *4 (N.D. Ill. Aug. 28, 2008) ("Courts are less concerned about the burden that appearing at trial might impose on witnesses who are either employees of parties or paid experts; it is presumed that such witnesses will appear voluntarily."). ThermaPure asserts that the co-inventor of the '812 patent, who lives in California, is the only relevant non-party witness. Neither party has named any potential witnesses in Illinois. Based on the location of Temp-Air's witnesses, this factor weighs slightly in favor of transfer.

### 4. Convenience of the Parties

In evaluating the convenience of the parties, the court considers the parties' residences and their ability to bear the expense of litigating in each forum. *Brandon Apparel*, 42 F. Supp.

2d at 834. Neither party is a resident of this district and neither party has asserted that the financial burden of litigating in the non-preferred forum would affect its ability to litigate this case. Clearly, it would be more convenient for Temp-Air to litigate the claims in the District of Minnesota because its witnesses, documents, and products are in Minnesota. ThermaPure, on the other hand, is already engaged in litigation in this forum and it would be more convenient for ThermaPure to continue litigating its claims against Temp-Air here. ThermaPure also asserts that this district is more convenient for Giertsen Illinois, which has filed cross-claims against Temp-Air. Giertsen Illinois's cross-claims, however, are peripheral to ThermaPure's patent action against Temp-Air, which is the manufacturer of the accused goods. *See Spread Spectrum Screening, LLC*, 2010 WL 3516106, at *2–3 (joinder of customers adds nothing to plaintiff's claims against defendant manufacturer where the only allegation against the customers is that they used the infringing product).[9] Therefore, either Temp-Air or ThermaPure will be inconvenienced by the choice of forum. This factor is neutral with respect to transfer. *See Chem. Waste Mgmt., Inc.* v. *Sims*, 870 F. Supp. 870, 876 (N.D. Ill. 1994) (defendants must show that transfer will do more than "merely transform[ ] an inconvenience for one party into an inconvenience for the other party" (citation omitted) (internal quotation marks omitted)).

---

[9] Temp-Air also asserts that Giertsen Minnesota's witness related to the sale, Richard Giertsen Sr., lives in Minnesota. Temp-Air Mot. to Sever and Transfer Ex. D.

B. **Interests of Justice**

"The 'interest of justice' is a separate component of a § 1404(a) transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and witnesses might call for a different result." *Coffey*, 796 F.2d at 220 (citations omitted). Factors considered in this analysis involve the efficient administration of the court system, such as the likelihood of a speedy trial, the possibility of consolidation, and the familiarity of judges in each forum with applicable law. *Id.* at 221. The desirability of resolving controversies in their locale has also been cited as a factor. *See First Nat'l Bank* v. *El Camino Res., Ltd.*, 447 F. Supp. 2d 902, 914 (N.D. Ill. 2006); *Amoco Oil Co.* v. *Mobil Oil Corp.*, 90 F. Supp. 2d 958, 962 (N.D. Ill. 2000).

1. **Likelihood of a Speedy Trial**

ThermaPure asserts that the local patent rules in this district are more favorable because they reduce the cost and expense of patent litigation. ThermaPure has cited no evidence in support of this contention, and the local patent rules will not be taken into account. *See Illinois Computer Research, LLC*, 2010 WL 4877501, at *6 (local patent rules in the Northern District of Illinois are not assumed to reduce the length of trial). Neither party has argued that ThermaPure's claims would be resolved more or less quickly in either district. Therefore this factor is neutral with respect to transfer.

2. **Familiarity with Applicable Law**

Relative familiarity with applicable law is not an issue in a patent case, as the applicable law is the same throughout the country. This factor is neutral with respect to transfer.

### 3. Desirability of Resolving Controversies in Their Locale

Temp-Air argues that its claims should be litigated in the District of Minnesota because Minnesota, which is the situs of the material events, has the greater interest in this case. Temp-Air also asserts that the dispute between ThermaPure and Temp-Air has no relation to the Northern District of Illinois and reiterates that it has not sold any products to the Illinois defendants. ThermaPure responds that this district has the more significant interest in the litigation because Temp-Air maintains an office in this district and sells bed bug equipment in this district via its website.

ThermaPure's assertions regarding the interest of this district are not persuasive, particularly where ThermaPure has not clearly articulated the nature of the accused products. In patent cases, "the locale of infringement actions is often the primary place of the defendant's operations." *BorgWarner, Inc.* v. *Hilite Int'l, Inc.*, No. 07 C 3339, 2008 WL 3849908, at *6 (N.D. Ill. Aug. 14, 2008) (citing *Tech. Concepts L.P.* v. *Zurn Indus.*, *Inc.*, No. 02-C-5150, 2002 WL 31433408, at *7 (N.D. Ill. Oct. 31, 2002)). ThermaPure has not alleged that the development or manufacture of the accused products occurred in this district. Nor has ThermaPure provided any evidence as to the number of Temp-Air's products that have been purchased in this district. Temp-Air's headquarters are in the District of Minnesota, its employees are in that district, and that district is accordingly where the impact of the adjudication of ThermaPure's claims would be felt. This factor therefore weighs in favor of transfer.

####    4.      The Possibility of Consolidation

For the reasons set forth in the court's decision on defendants' motions to sever, there is no possibility for consolidation of the claims against Temp-Air with those against the other defendants. Therefore this is a neutral factor with respect to transfer.

Taking the foregoing factors into account, the interests of justice favor transferring ThermaPure's action against Temp-Air to Minnesota. The material events occurred in Minnesota and the majority of the documents, witnesses, and other forms of evidence are located in Minnesota. Furthermore, ThermaPure's claims against Temp-Air do not have a significant relationship to Illinois.

###   C.      Stay of ThermaPure's Claims Against Giertsen Illinois

Because the court will grant Temp-Air's motion to transfer, it also considers Temp-Air's request to stay ThermaPure's claims against Giertsen Illinois until the dispute between Temp-Air and ThermaPure is resolved. Temp-Air argues that the court should either dismiss ThermaPure's suit against Giertsen Illinois or stay the suit until the dispute between ThermaPure and Temp-Air is resolved. Temp-Air cites *Spread Spectrum Screening, LLC*, 2010 WL 3516106, at *3, where the court stayed a patent infringement case against customer co-defendants and transferred the case against the manufacturer to the Western District of New York, based on a finding that the customers were only peripherally involved in the lawsuit. *See also Card Activation Techs.* v. *Pier 1 Imports*, *Inc.*, No. 09 C 2021, 2009 WL 2956926, at *1 (N.D. Ill. Sept. 14, 2009) (granting motion to stay because "litigation against . . . the manufacturer of infringing goods takes precedence over a suit by the patent owner against customers of the manufacturer" (quoting *Katz* v. *Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990)); *Ambrose* v. *Steelcase, Inc.*, No. 02 C 2753, 2002 WL 1447871, at *6–7 (N.D. Ill.

Jul. 3, 2002) (granting motion to sever and stay where patent infringement action had been brought against defendants who were merely resellers of the allegedly infringing products).

ThermaPure does not take issue with Temp-Air's description of Giertsen Illinois as a purchaser of the infringing products from Temp-Air. Rather, it responds that *Khan* v. *Gen. Motors Corp.*, 889 F.2d 1078 (Fed. Cir. 1989), precludes the court from staying ThermaPure's claims. In *Khan*, the Court of Appeals for the Federal Circuit concluded the district court had erred in granting a stay because it improperly applied the "customer suit" exception to the general rule that the first filed suit should have priority. The Federal Circuit focused on the fact that the determination of liability in the second action (involving the putative manufacturer) would not resolve all issues of liability with respect to the first action (involving the putative customer). *See* 889 F.2d at 1081. Here, however, Giertsen Illinois's alleged liability is premised upon the fact that it purchased infringing products and received training from Temp-Air. *See* ThermaPure's Resp. to Temp-Air's Mot. to Dismiss and Sever at 6 ("[W]hile Temp-Air may be directly infringing in some circumstances by selling a complete kit to Giertsen, it is also inducing Giertsen to infringe by training Giertsen, and it is also infringing by selling component parts."). If Temp-Air's products are not found to infringe ThermaPure's patents, then Giertsen Illinois cannot be liable to ThermaPure. On the other hand, should ThermaPure establish its infringement claims against Temp-Air in the District of Minnesota, the case against Giertsen Illinois can go forward on the issue of damages only. Accordingly, the motion to stay appears to serve "the just, speedy and inexpensive" disposition of this litigation. Fed. R. Civ. P. 1. ThermaPure's case against Giertsen Illinois will therefore be stayed.

**CONCLUSION AND ORDER**

For the foregoing reasons, RxHeat and Cambridge's motion to sever [#57] is granted. The claims against them are dismissed without prejudice. Temp-Air's motion to sever and transfer venue to the District of Minnesota [#75] is granted. The Clerk is directed to transfer the claims against Temp-Air to the District of Minnesota. All proceedings against Giertsen Illinois are stayed until further order of the court. The case is set for a status hearing on January 18, 2011, at 9:00 A.M.

Accordingly, ThermaPure must file a separate lawsuit if it wishes to proceed against RxHeat and/or Cambridge. In the event that ThermaPure should decide to file a new suit against RxHeat and/or Cambridge in this district, the court instructs as follows: (1) on the cover sheet for the new action, ThermaPure should not characterize the new action as the refiling of a previously dismissed action because that would cause the case to be assigned directly to this court's calendar; and (2) ThermaPure should not file a motion for reassignment under Local Rule 40.4 because the cases would not be "susceptible of disposition in a single proceeding." *See* Local R. 40.4(b)(4); *Billingnetwork Patent, Inc.*, 2010 WL 45765, at *1. The court anticipates, however, that it might be appropriate to enter reciprocal orders in the different cases to provide that discovery in one case would also constitute discovery in the other case. *See Billingnetwork Patent, Inc.*, 2010 WL 45765, at *1.

Dated: December 22, 2010          Entered: _____

                                                     JOAN HUMPHREY LEFKOW
                                                     United States District Court Judge